**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
JON Q. WRIGHT,

|                          |                    |                             |
|--------------------------|--------------------|-----------------------------|
|                          | **Plaintiff,**     | **REPORT AND RECOMMENDATION** |
| -against-                |                    | 21-CV-6063 (PKC) (RLM)      |
| JOVI EDWARDS,            |                    |                             |
|                          | **Defendant.**     |                             |

-------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Jon Q. Wright ("plaintiff") brings this action against defendant Jovi Edwards ("defendant") for copyright infringement under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 *et seq.*, and misrepresentation of copyright claims under the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 512 *et seq.*, seeking damages, a permanent injunction, and other relief.  See generally Complaint (Nov. 1, 2021) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") 1.  Currently pending before this Court, on a referral from the Honorable Pamela K. Chen, is plaintiff's motion for default judgment and other relief.  See generally Motion for Default Judgment and Other Relief Against Defendant Jovi Edwards (Feb. 16, 2022) ("Pl. Motion"), DE #11; Memorandum of Law in Support of Motion (Feb. 16, 2022) ("Pl. Mem."), DE #11-1.  For the reasons set forth below, this Court respectfully recommends that plaintiff's motion be granted in part and denied in part.

## BACKGROUND

### I.   Factual Background

According to the uncontested factual allegations set forth in the Complaint, plaintiff is a Montana resident and the author of an original work, titled "Legend Series Artwork: Bass" (the "Subject Work").  See Compl. ¶¶ 4, 7.  The Subject Work includes an illustration of a fish—specifically, a bass—jumping out of the water toward a lure on the end of a fishing line. See Comparison of Original Work and Infringing Use (Nov. 1, 2021) ("Works Comparison"), DE #1-4.  The Subject Work was published as a series of designs for use on silkscreened T-shirts and sweatshirts.  See Subject Work Copyright Registration filed on June 1, 2001 (docketed on Nov. 1, 2021) ("Certificate of Registration") at 1, DE #1-1.  Prior to the commencement of this action, plaintiff registered the Subject Work with the U.S. Copyright Office under U.S. Copyright Registration No. VA 1-153-915, with an effective date of June 1, 2001.  See id.; Compl. ¶ 8.  In addition to selling "stand-alone art pieces bearing the [Subject Work]," plaintiff "also licenses his artwork for use on a variety of products, including t-shirts, fabric prints, and other merchandise."  Pl. Mem. ¶ 31.  Plaintiff claims that the licensing fees associated with the Subject Work generate at least $6,500.00 in annual revenues for plaintiff. See id.; see generally License Agreement (Feb. 16, 2022) ("Sample License Agreement"), DE #11-8 (sample licensing agreement with "JQ Licensing LLC").

Defendant is a resident of the United Kingdom who operates an online merchandise shop through the website platform www.Etsy.com ("Etsy") under the shop name "Slautanlies."  See Compl. ¶ 5; Pl. Mem. ¶ 42 n.3.  As part of his Etsy shop, defendant offered for sale certain merchandise depicting the Subject Work (the "Infringing Material"),

without plaintiff's permission.  See Compl. ¶¶ 9-10; Plaintiff's Etsy DMCA Takedown Notice dated Oct. 15, 2021 (docketed on Nov. 1, 2021) ("DMCA Notice") at 1-3, DE #1-2.  More specifically, defendant sold digital files (at $2.99 each) bearing the Subject Work that customers could print at home and adhesively affix to 21-ounce drink tumblers.  See Pl. Mem. ¶¶ 24, 32.  Defendant sold 23 of these allegedly infringing digital files through his Etsy shop, which generated $68.77 in revenues for defendant.  See id.; Defendant's Etsy Listing (Feb. 16, 2022), DE #11-7.  Plaintiff asserts that $68.77 also represents defendant's profits, as well as actual damages resulting from defendant's infringement.  See Pl. Mem. ¶¶ 33-34.

On October 15, 2021, after discovering defendant's unauthorized use of the Subject Work, plaintiff, through counsel, submitted to Etsy a DMCA Notice of the alleged copyright infringement "demand[ing] the removal/disabling of one [of defendant's] listing[s] on the Etsy website that was unlawfully displaying and offering for sale merchandise that feature[d] the Subject Work[.]"  Compl. ¶ 10; see id. ¶ 9; DMCA Notice at 1-3.  In response to plaintiff's claims, on October 19, 2021, defendant "sent a DMCA counter-notice . . . to Etsy[,] asserting that the listing identified in [p]laintiff's takedown notice was removed or disabled by mistake or because of misidentification of the material."  Compl. ¶ 11; see Defendant's Etsy DMCA Takedown Counter-Notice dated Oct. 19, 2021 (docketed on Nov. 1, 2021) ("DMCA Counter-Notice") at 1-2, DE #1-3.  In the DMCA Counter-Notice, defendant averred to and electronically signed the following statement:

> I swear under penalty of perjury that I have a good faith belief that the material was removed or disabled by mistake or because of misidentification of the material.
>
> I consent to the jurisdiction of Federal Court for the judicial district in which I am located, or if my address is outside of the United States, for any judicial

district in which Etsy is located, and that I will accept service of process from the person who provided the original notification or an agent of such person.

DMCA Counter-Notice at 2.[1]

On the same day, plaintiff's counsel requested that defendant provide the basis for his DMCA Counter-Notice, but defendant failed to respond; plaintiff's counsel also provided defendant with plaintiff's proof of ownership of the Subject Work.  See Compl. ¶ 15; Email to Defendant regarding DMCA Counter-Notice dated Oct. 19, 2021 (docketed on Feb. 16, 2022) ("10/19/21 Email") at 1, DE #11-10.

## II.    Procedural Background

On November 1, 2021, plaintiff brought this action against defendant, alleging claims for copyright infringement under the Copyright Act and misrepresentation in connection with copyright claims under the DMCA.  See generally Compl.  Plaintiff served defendant with the summons and Complaint, via Federal Express ("FedEx") international priority mail, at defendant's address in the United Kingdom, as provided in defendant's DMCA Counter-Notice; plaintiff also emailed a copy of the same to defendant.  See Pl. Mem. ¶¶ 6, 12-13, 15; Summons Returned Executed (docketed on Dec. 13, 2021) ("Executed Summons") at 1-3, DE #8.  Despite being properly served (as discussed *infra*), defendant failed to answer or respond to the Complaint.  Following defendant's failure to respond to the Complaint, plaintiff requested that a Certificate of Default be entered against defendant, see Request for Certificate of Default (Dec. 21, 2021), DE #9, and the Clerk of the Court noted the default, see Clerk's Entry of Default (Dec. 28, 2021), DE #10.

---

[1] Etsy Inc.'s U.S.-based headquarters is located at 117 Adams Street, Brooklyn, NY 11201.  See DMCA Notice at 3.

4

Plaintiff subsequently filed, and served upon defendant, a motion for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure (the "FRCP"). <u>See</u> <u>generally</u> Pl. Motion; Pl. Mem.; <u>see</u> <u>also</u> Certificate of Service – Motion for Default Judgment (docketed on Feb. 22, 2022) ("MDJ Certificate of Service") at 1-2, DE #12. In his motion papers, plaintiff purports to seek $65,000.00 in statutory damages, $5,936.00 in attorneys' fees, $576.66 in costs, as well as a permanent injunction against defendant and post-judgment asset restraint and transfer. <u>See</u> <u>generally</u> Pl. Mem.; Proposed Order (Mar. 4, 2022) at 2-3, DE #14-3. On February 17, 2022, the Honorable Pamela K. Chen referred plaintiff's motion for default judgment to the undersigned magistrate judge for a report and recommendation. <u>See</u> Order Referring Motion (Feb. 17, 2022).

On March 3, 2022, this Court directed plaintiff to supplement his submissions by filing, and serving on defendant, an application for attorneys' fees and costs and a proposed order of default judgment. <u>See</u> Scheduling Order (Mar. 3, 2022), DE #13. In the same order, the Court directed defendant to show cause why the relief requested in plaintiff's motion papers should not be granted and warned defendant that his failure to do so "will likely result in a judgment being entered against him." <u>Id.</u>

On March 4, 2022, plaintiff filed an affidavit in support of his updated request for attorneys' fees and costs, with supporting documentation, and a proposed order of default judgment. <u>See</u> <u>generally</u> Declaration in Support of Attorneys' Fees and Costs (Mar. 4, 2022) ("Supp. Decl."), DE #14; Detailed Time Report (Mar. 4, 2022), DE #14-1; Detailed Expense Report (Mar. 4, 2022), DE #14-2; Proposed Order. Plaintiff served both his supplemental

submissions and the Court's March 3, 2022 Order on defendant.  <u>See</u> Proof of Service

(docketed on Mar. 8, 2022), DE #15-2.

By order dated March 7, 2022, the Court directed plaintiff's counsel to submit a copy

of the firm's retainer agreement with plaintiff.  <u>See</u> Order (Mar. 7, 2022).  The following day,

plaintiff's counsel filed a copy of a retainer agreement with "JQ Licensing LLC."  <u>See</u>

<u>generally</u> Declaration of Dmitry Lapin re Retainer Agreement (Mar. 8, 2022), DE #15;

Retainer Agreement (docketed on Mar. 8, 2022), DE #15-1.

As of the date of this opinion, defendant has neither responded to the Complaint nor

otherwise appeared in this action.

## DISCUSSION

### I.    Default Judgment Standard

Where the "plaintiff's claim is [not] for a sum certain[,]" a plaintiff seeking default

judgment against a defendant who failed to answer or otherwise defend the case "must apply to

the court" after "the clerk [ ] enter[s] the [defendant's] default."  Fed. R. Civ. P. 55(a)-(b).  A

defendant's "default is deemed to constitute a concession of all well pleaded allegations of

liability[.]"  <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d

Cir. 1992).  Nevertheless, the court need not "agree that the alleged facts constitute a valid

cause of action," <u>TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.</u>, 536 F.App'x 45, 46 (2d

Cir. 2013) (internal quotation marks and citation omitted), and, "before [entering] a default

judgment, it must determine whether the allegations in a complaint establish the defendant's

liability as a matter of law[,]" <u>Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas</u>, 509

F.App'x 54, 56 (2d Cir. 2013) (citing <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir.

2009)).  To the extent that the plaintiff's allegations are inadequate, "a district court has discretion under Rule 55(b)(2) . . . to require proof of necessary facts" to satisfy itself that there is "a valid cause of action[.]"  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (internal citation omitted); accord Finkel, 577 F.3d at 84.

"When deciding a [defendant's liability on a] motion for default judgment, courts have . . . looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]"  Chanel, Inc. v. Jean-Louis, No. 06-cv-5924 (ARR)(JO), 2009 WL 4639674, at *3 (E.D.N.Y. Dec. 7, 2009) (citation omitted).  On a Rule 12(b)(6) motion, courts follow a two-prong approach.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009).  First, the complaint's conclusions of law and formulaic recitations of elements of a cause of action should be disregarded.  See id.  Second, where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  For mixed questions of law and fact, the inquiry is whether the plaintiff sufficiently alleged underlying facts to plausibly support its conclusions of law.  See, e.g., Cintas Corp. v. Unite Here, 355 F.App'x 508, 510 (2d Cir. 2009).  The Supreme Court has invited courts, in assessing the sufficiency of pleadings, to use their "judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Although, in deciding motions for default judgment, courts assume the truth of the pleadings' well-pled facts as they relate to liability, the facts alleged in the pleadings are not assumed to be true in assessing the plaintiff's right to the relief requested. See Au Bon Pain, 653 F.2d at 65. In other words, even if a defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or equitable relief. See Greyhound Exhibitgroup, 973 F.2d at 158; SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975). Instead, the relief requested must "be established by the plaintiff" with evidence, Greyhound Exhibitgroup, 973 F.2d at 158 (citations omitted), and may not exceed "what is specified in the [complaint's] 'demand for judgment,'" Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007). In this regard, a court may rely on "detailed affidavits and documentary evidence" and need not conduct an evidentiary hearing on the appropriateness of the relief requested. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39-40 (2d Cir. 1989).

## II.    Service of Process

Under Rule 4(f)(1) of the FRCP, an individual residing in a foreign country may be served with process "by *any* internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]" Fed. R. Civ. P. 4(f)(1) (emphasis added). "The Hague Service Convention is a multilateral treaty whose purpose is to simplify, standardize, and generally improve the process of serving documents abroad." Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co., Ltd., 20-CV-5209(JS)(ARL), 2020 WL 13280555, at *1 (E.D.N.Y. Nov. 18, 2020) (internal quotation marks and citation omitted). In

8

the instant case, the Hague Service Convention is the "applicable international agreement governing the service of process across national lines[,]" Vega v. Hastens Beds, Inc., 339 F.R.D. 210, 216 (S.D.N.Y. 2021) (citation omitted), given that defendant's country of residence—the United Kingdom—is a signatory thereof and defendant's address is known to plaintiff, see Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 [hereinafter Hague Service Convention]; *HCCH Members*, HCCH (July 10, 2022, 7:14 PM), https://www.hcch.net/en/states/hcch-members (listing the United Kingdom as a member and party to the Hague Service Convention).

    "When service occurs in a [Hague Service Convention] signatory country, under Fed. R. Civ. P. 4(f)(2)(C)(ii), 'service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.'" SEC v. Glob. Inv. Strategy UK Ltd., 20 Civ. 10838 (AKH), 2021 WL 4896127, at *2 (S.D.N.Y. Oct. 19, 2021) (quoting Water Splash, Inc. v. Menon, – U.S. – , 137 S.Ct. 1504, 1513 (2017)). "The [United Kingdom], a signatory to the Hague Convention[,] does not object to Article 10(a), and the Second Circuit has construed this to mean that service of process by international mail is valid." Id. (collecting cases). Accordingly, "[c]ourts have held that service made via registered mail, to a defendant's last known address is sufficient, even if the defendant no longer resides at the address at the time service is effectuated, where defendant does not assert, nor does the record establish, that the address to which service was made was not previously [his or] her address, and where the defendant otherwise received notice of the [ ] action." Id. (third alteration in original) (internal

9

quotation marks and citation omitted).  The use of FedEx as a commercial courier—whether by the Clerk of the Court or plaintiff's counsel—is an acceptable means of effecting service upon a foreign individual defendant via international mail.  See, e.g., id. at *2-3 (collecting cases and denying motion to dismiss for insufficient service of process where summons and complaint were sent to defendant in the United Kingdom, by the Clerk of the Court, via FedEx mail service); Rosenberg v. Lashkar-e-Taiba, 10-CV-5381 (DLI) (CLP), 2014 WL 12834840, at *10-12 (E.D.N.Y. Aug. 1, 2014) (recommending that the District Court find there had been proper service on several individual foreign defendants where plaintiffs' counsel mailed the summons and complaint to said defendants, via the U.S. Postal Service, which in turn used FedEx to deliver, and nothing indicated that the mailings had been returned to the sender); see also EDNY District Court Website, *EDNY Clerk's Office Foreign Mailing Instructions* at 2, https://www.nyed.uscourts.gov/forms/foreign-mailing-instructions (strongly recommending the use of commercial courier, such as FedEx, rather than U.S. mail, to effect service of process on a foreign defendant).

Here, plaintiff's service of process on defendant was sufficient.  As previously noted, defendant is a resident of the United Kingdom, see Compl. ¶ 5, which is a signatory to the Hague Service Convention.  Therefore, under these circumstances, service on defendant by international mail, via commercial courier, is acceptable under both Rule 4(f) and the Hague Service Convention.  See Fed. R. Civ. P. 4(f)(1); Glob. Inv. Strategy, 2021 WL 4896127, at *2.  Plaintiff's counsel avers that he mailed a copy of the summons, Complaint, exhibits, and civil cover sheet to defendant, via FedEx, at 6 The Hilders, Ashtead, United Kingdom, KT21 1LS—the address provided by defendant as part of his Etsy member information.  See

10

Executed Summons at 1-2; DMCA Counter-Notice at 1.  Plaintiff's counsel has also provided the FedEx tracking number and corresponding receipt, which confirms that the aforementioned documents were delivered to defendant's United Kingdom address on November 15, 2021.[2] See Executed Summons at 3.

Indeed, plaintiff's method of serving defendant was also reasonably calculated to provide defendant with notice, as substantiated by plaintiff's subsequent mailing of his motion papers to defendant.  Specifically, plaintiff's counsel has provided proof that he sent, via FedEx, the instant motion for default judgment to defendant at the same United Kingdom address that was utilized for service of process.  See MDJ Certificate of Service at 1-2.  The corresponding FedEx receipt reflects that, on February 17, 2022, this subsequent mailing was signed for by "J.EDWARDS[,]" demonstrating that defendant either resides or (at a minimum) receives mail at 6 The Hilders, Ashtead, United Kingdom.  See id. at 2.  The Court therefore draws the reasonable inference that defendant likewise actually received the summons and Complaint, despite a signature release having been filed for this particular FedEx delivery.[3] Finally, the Court notes that, on November 3, 2021, plaintiff's counsel also emailed the summons and Complaint to defendant at gaysoftleighbce84@gmail.com—the email address defendant provided in his DMCA Counter-Notice.  See Email to Defendant dated Nov. 3, 2021

---

[2] The FedEx receipt further reflects that plaintiff's counsel requested a signature confirmation for this mailing, but that no signature was obtained because a signature release was approved by defendant.  See Executed Summons ¶¶ 4-5 (plaintiff's counsel's averment to these facts); id. at 3 (FedEx tracking receipt indicating that the courier received a signature release).

[3] It is worth noting that defendant's receipt of plaintiff's motion papers would also have advised defendant of the pendency of the action, yet defendant still failed to move to set aside the entry of default, or otherwise appear in this matter.

(docketed on Feb. 16, 2022) at 1, DE #11-6; DMCA Counter-Notice at 1.  Thus, the Court concludes that plaintiff properly served defendant, and that defendant had notice of this action.

### III.    Jurisdiction and Venue

#### A.    Subject Matter Jurisdiction

Plaintiff has brought claims against defendant under the Copyright Act and the DMCA. See generally Compl.  The Court therefore has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks."); see also Jerstad v. N.Y. Vintners LLC, 18-CV-10470 (JGK) (OTW), 2019 WL 6769431, at *2 (S.D.N.Y. Dec. 12, 2019) (concluding that the district court had subject matter jurisdiction over plaintiff's copyright infringement and DMCA claims), adopted, 2020 WL 58237 (S.D.N.Y. Jan. 6, 2020).

#### B.    Personal Jurisdiction

The Court also has personal jurisdiction over defendant.  In the default judgment context, a court has discretion to consider *sua sponte* whether it has personal jurisdiction over a defaulting party.  See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011) ("[B]efore a court grants a motion for default judgment, it *may* first assure itself that it has personal jurisdiction over the defendant." (emphasis added) (citation omitted)).  "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like

other such rights, be waived." Id. (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982)).

This Court declines to raise *sua sponte* a personal jurisdiction defense on defendant's behalf because defendant expressly consented to the jurisdiction of this District.  See, e.g., Nimkoff v. Drabinsky, 17-cv-4458 (PKC), 2020 WL 3806146, at *4 n.7 (E.D.N.Y. June 9, 2020) (declining to raise *sua sponte* the defense of lack of personal jurisdiction where defendant "expressly consented to submit to the jurisdiction of this Court"), adopted, 2020 WL 3804458 (E.D.N.Y. July 7, 2020) (Chen, J.).  Defendant's consent is evidenced by his sworn DMCA Counter-Notice, which defendant sent in direct response to plaintiff's notification that defendant's merchandise, sold via his Etsy shop, infringed upon the Subject Work.  See DMCA Counter-Notice at 1-2.  As noted above, the DMCA Counter-Notice provides that defendant "consent[s] to the jurisdiction of Federal Court for the judicial district in which [defendant is] located, or if [defendant's] address is outside of the United States, for any judicial district in which Etsy is located[.]"  Id. at 2.  Defendant is a foreign resident and Etsy maintains its headquarters in Brooklyn, New York.  See id.; Compl. ¶ 5.  This Court therefore concludes that personal jurisdiction exists here based on defendant's consent.[4]

**C.    Venue**

Venue is proper in the Eastern District of New York.  First, defendant explicitly consented to venue by agreeing in the DMCA Counter-Notice to submit to jurisdiction in any district where Etsy is located—i.e., the Eastern District of New York.  See DMCA Counter-

---

[4] "In any event, a non-appearing defendant does not, by defaulting, forfeit his right to collaterally challenge any ensuing default judgment for a lack of personal jurisdiction."  Nimkoff, 2020 WL 3806146, at *4 n.7; see Compagnie des Bauxites de Guinee, 456 U.S. at 706 ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds[.]").

Notice at 2.  Moreover, by federal statute, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).  Because defendant agreed to be subject to the personal jurisdiction of this District, plaintiff has complied with the statutory requirements for venue by bringing his copyright infringement action before this Court.

In any event, having failed to answer or appear in this matter, defendant has waived any objections with respect to venue.  See Alonso v. New Day Top Trading, Inc., 18 Civ. 4745 (PAE) (DCF), 2021 WL 4691320, at *1 n.3 (S.D.N.Y. Oct. 7, 2021) (concluding that defendant waived objection to venue by failing to appear); see also MD Produce Corp. v. 231 Food Corp., 304 F.R.D. 107, 108 (E.D.N.Y. 2014) ("[T]he Court finds that [defendants] have waived th[e] defense [of improper venue] by their default."); Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("[A] defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default." (citations omitted)).  Accordingly, this dispute is properly before the Court.

## IV.    Liability

### A.    Plaintiff's Claim Under the Copyright Act

The allegations set forth in the Complaint state a valid claim for copyright infringement.  Section 106 of the Copyright Act gives the owner of a copyright the "exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]"  17 U.S.C. § 106; see Premium Sports, Inc. v.

14

Mendes, 17 CV 1309 (PKC) (CLP), 2018 WL 2078488, at *4 (E.D.N.Y. Mar. 1, 2018) (citing the same), adopted, Order (E.D.N.Y. Mar. 16, 2018). "Under the [Copyright] Act, '[a]nyone who violates any of the exclusive rights of the copyright owner as provided by section[s] 106 through 122 … is an infringer of the copyright or right of the author, as the case may be." Mendes, 2018 WL 2078488, at *4 (citation omitted). In order to establish copyright infringement, a plaintiff must prove two elements: first, the ownership of a valid copyright, and second, the copying of constituent elements of the work that are original. See id. (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991)); Joe Hand Promotions, Inc. v. Maupin, 2:15-cv-06355 (ADS)(AKT), 2018 WL 2417840, at *4 (E.D.N.Y. May 25, 2018) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010)).

With respect to the first element, plaintiff has provided a valid Certificate of Registration, issued by the U.S. Copyright Office, with the registration number VA 1-153-915 and effective date of June 1, 2001. See generally Copyright Registration. This Certificate of Registration constitutes prima facie evidence of the validity of the copyright and the facts stated therein. See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980) (citing 17 U.S.C. § 410(c)); Joe Hand Promotions, Inc. v. Rosero, 19-CV-792 (KAM), 2020 WL 2572328, at *4 (E.D.N.Y. Feb. 18, 2020), adopted, Order (E.D.N.Y. Mar. 5, 2020); Mendes, 2018 WL 2078488, at *5.

Regarding the originality element of copyright infringement, "when there exists prima facie validity of [p]laintiff's copyright, the burden of proof shifts to the [d]efendant to show [p]laintiff's work is not original." Mendes, 2018 WL 2078488, at *5 (internal quotation marks

and citation omitted); accord Rosero, 2020 WL 2572328, at *4. Having defaulted in this case, defendant has failed to rebut the presumption of validity that attaches with plaintiff's filing of a valid Certificate of Registration or to show that plaintiff's work is unoriginal. See, e.g., Rosero, 2020 WL 2572328, at *4. Accordingly, based on the allegations set forth in the Complaint and defendant's default, this Court concludes that plaintiff has established defendant's liability on plaintiff's claim of copyright infringement.

**B.      Plaintiff's Claim Under the DMCA**

Section 512(f) of the DMCA provides, in relevant part, that any person who knowingly materially misrepresents "that material or activity was removed or disabled by mistake or misidentification" is liable for:

> any damages, including costs and attorneys' fees, incurred . . . by any copyright owner . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation . . . in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f)(2). To state a claim under the DMCA, plaintiff must plead (1) that defendant knowingly misrepresented to Etsy that the listing identified in plaintiff's takedown notice was removed or disabled by mistake or because of misidentification of the material; (2) that, relying on defendant's willful misrepresentation, Etsy replaced or ceased disabling the infringing material; and (3) that, as a result of the aforementioned series of events, plaintiff incurred damages. See White v. UMG Recordings, Inc., 20 Civ. 9971 (AT), 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021).

Here, plaintiff alleges that defendant "knowingly ma[de] a material misrepresentation that the [Infringing Work] on the Etsy Website w[as] removed or disabled by mistake or misidentification[,]" Compl. ¶ 28, and that plaintiff was injured by defendant's

16

misrepresentations, see id. ¶ 30.  Nevertheless, nowhere in the Complaint does plaintiff allege that Etsy "rel[ied] upon such misrepresentation . . . in replacing the removed material or ceasing to disable access to it."[5]  17 U.S.C. § 512(f)(2).  Absent an allegation of such reliance by Etsy—or indeed that, after the takedown of the listing, the allegedly infringing listing was restored—the Complaint fails to state a claim under the DMCA, and plaintiff's Second Claim for Relief should be dismissed.  See Bus. Casual Holdings, LLC v. TV-Novosti, 21-CV-2007 (JGK), 2022 WL 784049, at *5 (S.D.N.Y. Mar. 14, 2022).

## V.    **Requested Relief**

### A.    **Statutory Damages**

Plaintiff has elected to seek statutory damages only as to his claim of copyright infringement, in the amount of $65,000.00.[6]  See Pl. Mem. ¶¶ 28, 38; Proposed Order at 2.  Under the Copyright Act, a prevailing plaintiff may choose "to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work," of between $750.00 and $30,000.00 per infringement, "as the Court considers just."  17 U.S.C. § 504(c)(1).  "[W]here the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  Willfulness may be inferred where, as here, the defendant has defaulted.  See, e.g., Farrington v. Sell It Soc., LLC, 18 Civ. 11696 (JPC), 2020 WL

---

[5] In fact, inasmuch as plaintiff proffers that Etsy agreed not to permit defendant to re-post the Infringing Material while the present litigation is ongoing, see Pl. Mem. ¶ 43, plaintiff has not satisfied the second element of his claim under section 512(f) of the DMCA.

[6] Moreover, as discussed in the preceding section of this opinion, plaintiff has, in any event, failed to state a cognizable claim under the DMCA.

7629453, at *1 (S.D.N.Y. Dec. 21, 2020) ("copyright infringement may be deemed willful by virtue of a defendant's default, without a further showing by the plaintiff" (citations omitted)).

"District courts have broad discretion to set the amount of the award within the statutory limits." Samsonite IP Holdings v. Shenzhen Liangyiyou E-Commerce Co., Ltd., 19cv02564 (PGG) (DF), 2021 U.S. Dist. LEXIS 80717, at *16 (S.D.N.Y. Apr. 26, 2021) (citations omitted). To determine the appropriate measure of statutory damages for copyright infringement, courts in the Second Circuit consider the following:

> (i) the expenses saved and profits earned by the infringer; (ii) the revenues lost by the plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on those other than the infringer; (v) the willfulness of the infringer's conduct; (vi) whether the infringer cooperated in providing records to assess the value of the material infringed; and (vii) the likelihood the award will discourage the defendant from repeating its infringement.

Reilly v. Plot Commerce, 15-CV-05118 (PAE) (BCM), 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016) (citations omitted).

While "[s]tatutory damages need not be directly correlated to actual damages, [ ] they ought to bear some relation to actual damages suffered." Dermansky v. Tel. Media, LLC, 19-CV-1149 (PKC) (PK), 2020 WL 1233943, at *5 (E.D.N.Y. Mar. 13, 2020) (citation omitted) (Chen, J.). "As such, it is common for courts to tether their assessments of statutory damages to the … loss of the fair market value of the license fees[.]" Tetra Images, LLC v. Grahall Partners, LLC, 19-CV-05250 (PMH), 2021 WL 2809566, at *3 (S.D.N.Y. July 6, 2021) (internal quotation marks and citations omitted).

Here, plaintiff urges the Court to utilize his average licensing fee as a starting point for calculating statutory damages, which plaintiff purports is $6,500.00, "depend[ing] on the scope and type of use[.]" Affidavit of Jon Q. Wright (Feb. 16, 2022) ¶¶ 23-24, DE #11-2; see Pl.

Mem. ¶¶ 31, 38.  While plaintiff's opinion, without more, is insufficient to establish a benchmark for the fair market value of his licensing fee, plaintiff has provided evidence of a similar licensing agreement for the Subject Work, for which plaintiff purports to have received $6,666.67 in revenues.  See generally Sample License Agreement; Exhibits A and B to the Sample Licens[e] Agreement (docketed on July 14, 2022) ("Sample Exhibits"), DE #17-1;[7] see also Pl. Mem. ¶ 31 (stating that the sample license agreement pertains to the "same artwork"— i.e., the Subject Work); Tetra Images, 2021 WL 2809566, at *3 (concluding that it was reasonable to believe plaintiff's licensing fee for a copyrighted photograph was $2,500 per year where plaintiff provided evidence that a similar photograph had been licensed by plaintiff to a buyer for $4,000 per year).  Nevertheless, it is unclear from the language of the sample agreement how plaintiff arrived at the $6,666.67 figure, as the contract provides that the licensee will pay $5,000.00 for the use of the copyrighted work for the first 18 months and $15,000.00 for continued use for the second 18 months.  See Sample License Agreement ¶ 4. The Court therefore uses $5,000.00 as the licensing fee benchmark for determining the total statutory damages award, as this amount is supported by the plain language of the sample agreement.

Next, plaintiff requests that the Court apply a multiplier of ten times his licensing fee for the Subject Work, which he claims would yield a total award of $65,000.00.  See Pl. Mem. ¶¶ 37-38.  In support of this bloated damages request, plaintiff argues that defendant's infringement was "willful and egregious[,]" id. ¶ 38, and that, under these circumstances,

---

[7] Having neglected to originally docket Exhibits A and B to the Sample License Agreement, plaintiff was instructed to supplement his submissions to provide these portions of the contract.  See Scheduling Order (July 5, 2022); Order (July 7, 2022).  Exhibit A confirms that the Sample License Agreement concerned only one illustration, the Subject Work (albeit a modified version thereof).  See Sample Exhibits at 1.

courts in the Second Circuit frequently award statutory damages three to five times the cost of a licensing fee, see id. ¶ 37.  To be sure, "[i]n willful copyright infringement cases, a multiplier of [three to five times] the licensing fee is in line with the general approach taken by courts in calculating statutory damages."  Howarth v. FORM BIB LLC, 18-CV-7047 (JPO)(SN), 2020 WL 3441030, at *4 (S.D.N.Y. May 11, 2020) (collecting cases awarding three to five times licensing fees as damages), adopted, 2020 WL 3436685 (S.D.N.Y. June 22, 2020).  But plaintiff cites no caselaw to support a ten-fold increase in statutory damages, which would constitute an upwards departure from the three to fivefold increases typically awarded. See Pl. Mem. ¶¶ 28-38.  Likewise, plaintiff provides no evidence that defendant's conduct rises to the level of "egregious," see id., and, while defendant's conduct was willful, "not all willful conduct constitutes the kind of truly egregious conduct that justifies maximum damages[,]" Korzeniewski v. Sapa Pho Vietnamese Rest. Inc., 17-CV-5721-MKB-SJB, 2019 WL 312149, at *8 (E.D.N.Y. Jan. 3, 2019) (citation omitted), adopted, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019).  Indeed, "[c]ases where high statutory damages are awarded typically involve defendants who profit significantly despite repeated notices that they are infringing on the plaintiff's copyright."  Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc., 291 F.Supp.3d 554, 560 (S.D.N.Y. 2018) (collecting cases).

The case at bar bears no resemblance to those involving egregious conduct and awards of substantial statutory damages.  Defendant received less than $70.00 in total revenues from 23 sales of the digital files depicting the Subject Work—sales that occurred within the span of only six weeks—and thus can hardly be said to have significantly profited from the infringement.  See Pl. Mem. ¶ 32; Etsy Records (Feb. 16, 2022) at 2-5, DE #11-9 (Etsy

records of defendant's seller account showing 23 sales, from September 8, 2021 through October 18, 2021, totaling $68.77 in revenues).  Moreover, plaintiff filed only a single DMCA Notice with Etsy, followed by an email, through counsel, sent to defendant, inquiring as to the basis for defendant's DMCA Counter-Notice.  See generally DMCA Notice; see 10/19/21 Email at 1.  As such, an award of $65,000.00 would be "entirely discordant with the loss [plaintiff] actually suffered." Korzeniewski, 2019 WL 312149, at *9; see Dermansky, 2020 WL 1233943, at *6 (concluding that "the infringing conduct was *de minimus*[,]" Judge Chen awarded $1,000 in statutory damages, "to account for the willful actions of Defendant and the need to deter others").

Ultimately, while the Court agrees that a statutory damages award should exceed the cost of plaintiff's licensing fee, "so as to put infringers on notice that it costs less to obey the copyright laws than to violate them[,]" Tetra Images, 2021 WL 2809566, at *4 (citation omitted), a multiplier of ten is unsupported by the record, see, e.g., Broad. Music, Inc. v. Prana Hosp., Inc., 158 F.Supp.3d 184, 199 (S.D.N.Y. 2016) (rejecting plaintiffs' request for statutory damages amounting to six times the sum of unpaid licensing fees because plaintiffs did not establish "the basis for exceeding [the] customary norm"); Howarth, 2020 WL 3441030, at *3 (rejecting plaintiff's request for statutory damages that amounted to "nearly fifty times" the plaintiff's annual licensing fee because plaintiff failed to justify such an "exceptional award").  Accordingly, the Court recommends that a multiplier of three be applied, resulting in a total statutory damages award of $15,000.00.  See, e.g., Erickson Prods., Inc. v. Only Websites, Inc., 12 Civ. 1693 (PGG) (KNF), 2016 WL 1337277, at *2-3 (S.D.N.Y. Mar. 31, 2016) (awarding statutory damages of $11,250, which represented three

times the plaintiff's normal licensing fee); <u>Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc.</u>, No. 13 Civ. 5467(VSB)(JLC), 2014 WL 1396543, at *3-4 (S.D.N.Y. Apr. 11, 2014) (recommending statutory damages award of three times plaintiff's licensing fee—i.e., $9,000— and concluding that this damages award would have the "desired deterrent effect on both [defendant] and other potential infringers"), <u>adopted</u>, 2014 WL 5051275 (S.D.N.Y. Oct. 8, 2014).

### B.    <u>Injunctive Relief</u>

In addition to statutory damages, plaintiff requests that the Court issue a permanent injunction, enjoining defendant from re-listing any infringing designs on defendant's Etsy shop, "Slautanlies." <u>See</u> Pl. Mem. ¶¶ 39-47.  "Courts may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." <u>Asia TV USA Ltd. v. Kamran Int'l Trade Ltd.</u>, 17 CV 5057 (FB), 2018 WL 6313215, at *9 (E.D.N.Y. Sept. 25, 2018) (collecting cases) (internal quotation marks omitted), <u>adopted</u>, 2018 WL 6313180 (E.D.N.Y. Dec. 3, 2018).  As a threshold matter, the Copyright Act empowers district courts to grant permanent injunctive relief.[8]  Specifically, section 502(a) of the Copyright Act provides that a district court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." <u>TVB Holdings (USA), Inc. v. HTV Int'l Ltd.</u>, 16-CV-1489 (DLI)(PK), 2018 WL 7076022, at *7 (E.D.N.Y. Mar. 9, 2018) (quoting 17 U.S.C. § 502(a)).  "An injunction, however, is not

---

[8] While the DMCA also permits district courts to issue injunctive relief, <u>see</u> <u>Eileen Grays, LLC v. Remix Lighting, Inc.</u>, 1:18-cv-362 (MAD/DJS), 2019 WL 6609834, at *5 (N.D.N.Y. Dec. 5, 2019), plaintiff has not adequately pled a claim under the DMCA, as discussed <i>supra</i>.

mandatory and does not automatically follow a determination that a copyright has been infringed." HarperCollins Publrs. LLC v. Open Rd. Integrated Media, LLP, 58 F.Supp.3d 380, 385 (S.D.N.Y. 2014) (citation omitted).

"The relevant standard for issuing a permanent injunction in a . . . copyright infringement action is the four-factor test articulated in eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)." N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC, 13 Civ. 4974 (ERK) (VMS), 2015 WL 13856995, at *23 (E.D.N.Y. Jan. 5, 2015). Under the *eBay* test, a plaintiff seeking a permanent injunction must establish:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, 547 U.S. at 391 (citations omitted); see Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010); BMaddox Enters. LLC v. Milad Oskouie, Osko M Ltd., No. 17-CV-1889 (RA), 2021 WL 3675072, at *15 (S.D.N.Y. Aug. 18, 2021). "Permanent injunctions are appropriate only where … there is a *substantial* likelihood of future infringements." Marshall v. Marshall, No. 08 CV 1420(LB), 2012 WL 1079550, at *29 (E.D.N.Y. Mar. 30, 2012) (emphasis added) (citation omitted), aff'd, 504 F.App'x 20 (2d Cir. 2012); see Appalseed Prods., Inc. v. MediaNet Digital, Inc., No. 11 Civ. 5922(PGG), 2012 WL 2700383, at *10 (S.D.N.Y. July 6, 2012) (same). "It is within the court's equitable discretion to grant or deny a permanent injunction." N. Atl. Operating Co., 2015 WL 13856995, at *23 (citation omitted). Here, even assuming *arguendo* that plaintiff has satisfied the latter two factors (i.e., the balance of

hardships and public disservice), he has failed to establish the first two such factors—

irreparable injury and the inadequacy of money damages.

　　With respect to the first element, "[c]ourts must not presume irreparable injury in

copyright cases[.]"  Asia TV, 2018 WL 6313215, at *10 (citing Salinger, 607 F.3d at 82).  It

therefore remains plaintiff's burden "to establish a threat of 'continuing' copyright

infringement."  Poparic v. Jugo Shop, No. 08-CV-2081 (KAM)(JO), 2010 WL 1260598, at *9

(E.D.N.Y. Mar. 31, 2010).  In the instant case, plaintiff asserts that "[d]efendant *may* continue

to infringe [p]laintiff's copyrights by simply re-listing the infringing design, or another design

bearing [p]laintiff's artwork, under a new listing ID."  Pl. Mem. ¶ 42 (emphasis added).[9]  Yet,

plaintiff has failed to proffer any admissible evidence supporting such rank speculation.

Contrary to plaintiff's assertion that defendant "maintains the same storefront through

Etsy.com[,]" id., the Court's review of the website link to defendant's Etsy shop reveals that

defendant has since ceased the operation of "Slautanlies," and is no longer an Etsy member as

of the date of this opinion, see *Slautanlies Etsy Shop*, ETSY,

https://www.etsy.com/shop/Slautanlies (last visited July 15, 2022) (link to defendant's Etsy

store, provided by plaintiff, displaying message that "Slautanlies is currently not selling on

Etsy" and indicating that defendant is no longer an Etsy member).  Given defendant's apparent

abandonment of his Etsy store, as well as plaintiff's concession that "defendant has not

continued in its infringing acts," Pl. Mem. ¶ 43, the likelihood of future infringement of the

Subject Work is remote.  Plaintiff has provided no credible evidence to support his unreasoned

and wholly speculative assertion that "there remains a serious possibility that [d]efendant will

---

[9] Plaintiff does not assert in the Complaint or his motion papers that he suffered irreparable injury due to defendant's past infringement.  See generally Compl.; Pl. Mem.

once again infringe [p]laintiff's copyrights[.]"  Id.  Based on plaintiff's lack of evidence, the Court concludes that plaintiff has not satisfied the first *eBay* factor, which militates against the issuance of injunctive relief.  See, e.g., Masterfile Corp. v. Country Cycling & Hiking Tours by Brooks, Inc., No. 06 Civ. 6363(SAS)(FM), 2008 WL 313958, at *5 (S.D.N.Y. Feb. 4, 2008) (concluding that no basis for a permanent injunction existed where defendant was semi-retired, all infringing material had been removed from defendant's website, and plaintiff failed to show that defendant would continue to violate plaintiff's copyrights), adopted, 2008 WL 11516909 (S.D.N.Y. Feb. 21, 2008); Caffey v. Cook, 409 F.Supp.2d 484, 510 (S.D.N.Y. 2006) (denying request for permanent injunction in part because plaintiff failed to submit any evidence of a threat of continuing infringement); cf. Entral Grp. Int'l, LLC v. Sun Sports Bar Inc., No. 05-CV-4836 (CBA), 2007 WL 2891419, at *7 (E.D.N.Y. Sept. 28, 2007) (injunctive relief warranted where defendants continued infringing activities after being served with complaint and temporary restraining order).

As to the second factor of the *eBay* test, plaintiff has failed to show that monetary damages are insufficient to compensate him for his injuries.  "A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright(s)."  Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F.Supp.2d 619, 633 (S.D.N.Y. 2011) (citation omitted).  As discussed *supra*, the record does not bear out that defendant's infringing activities are likely to continue in the future, especially given that defendant's Etsy shop has since been deactivated and no further infringements have occurred. See *Slautanlies Etsy Shop*, https://www.etsy.com/shop/Slautanlies; Pl. Mem. ¶ 43.  Nor has plaintiff put forth "evidence of likely reputational damage, loss of goodwill, negative effects on

profitability [or] damage to [p]laintiff['s] relationships with [his] direct clients and customers"—i.e., injuries that are difficult to quantify and redress with monetary relief.  N. Atl. Operating Co., 2015 WL 13856995, at *24 (recommending issuance of permanent injunction where plaintiff provided evidence of the foregoing injuries that could not be readily addressed by a damages award).

Having failed to offer probative evidence, plaintiff nevertheless argues—relying primarily on Montblanc-Simplo GmbH v. Colibri Corporation, 692 F.Supp.2d 245 (E.D.N.Y. 2010)—that statutory damages are insufficient to redress his injuries because he has no "assurance against [d]efendant's continued violation of [p]laintiff's copyrights[.]"  Pl. Mem. ¶ 44.  Plaintiff's reliance on Montblanc-Simplo is misplaced.  There, the defendant company continued to market merchandise over the internet, despite reportedly ceasing its operations—a fact that led this Court to find no reason to believe that the defendant had ceased or would cease its infringing activities.  See Montblanc-Simplo, 692 F.Supp.2d at 258-59 nn.7-8.  Here, in contrast, plaintiff does not contend that defendant's infringing activity is ongoing, and defendant has canceled his membership with Etsy.  Thus, the Court concludes that plaintiff has not shown that monetary damages are inadequate, the second element of the *eBay* test.  See, e.g., Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F.Supp.2d 506, 516 (E.D.N.Y. 2006) (concluding that plaintiff failed to satisfy the second "adequacy" element where "no evidence" was provided that "plaintiff will suffer irreparable harm or that the statutory and enhanced damages are insufficient to deter future conduct").

In sum, plaintiff has failed to meet his burden of demonstrating entitlement to a permanent injunction and he therefore should be denied such equitable relief.  See, e.g., Tetra

26

Images, 2021 WL 2809566, at *6 (denying request for injunctive relief in copyright infringement action where plaintiff failed to establish existence of irreparable injury or the insufficiency of money damages to compensate plaintiff for its injuries).

### C. Post-Judgment Asset Restraint and Transfer

#### i. Asset Restraint

Plaintiff requests that the Court impose a post-judgment asset restraint on defendant's Etsy account and on "any other asset holders, such as banks, financial institutions, or other entity that engages in the transfer of real or personal property[,]" Pl. Mem. ¶ 62, pursuant to New York C.P.L.R. § 5222, as incorporated through Rule 69 of the FRCP, see id. ¶ 58. Under section 5222, a restraining notice may be issued "against a judgment debtor that prohibits disposition or transfer of property until the judgment is satisfied." Allstar Mktg. Grp., LLC v. 123 Beads Store, 19-CV-3184 (AJN), 2020 WL 5836423, at *7 n.3 (S.D.N.Y. Sept. 30, 2020). As several courts in this Circuit have observed, however, the freezing of a defaulting defendant's assets is intended to preserve the plaintiff's ability to pursue and obtain equitable relief. See, e.g., WowWee Grp. Ltd. v. Meirly, 18-CV-706 (AJN), 2019 WL 1375470, at *11 (S.D.N.Y. Mar. 27, 2019), reconsideration denied by 2020 WL 70489 (S.D.N.Y. Jan. 7, 2020); Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12 Civ. 6283(AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012), supplemented by 2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012). Statutory damages are considered a remedy at law, not in equity; as such, where the plaintiff has elected statutory damages (as is the case here), there is no basis for the Court to impose a post-judgment asset freeze. See Meirly, 2019 WL 1375470, at *11 (declining to extend pre-judgment asset freeze where the plaintiff elected to pursue statutory

damages, reasoning that asset freezes are "designed to facilitate an equitable recovery"); see also Kelly Toys Holdings, LLC v. alialialiLL Store, 21 Civ. 8434 (AKH) (RWL), 2022 WL 2072567, at *14-15 (S.D.N.Y. June 9, 2022).

Moreover, if and when a judgment is entered against defendant, plaintiff may then seek to utilize those remedies applicable to the enforcement of judgments available under Rule 69 of the FRCP and New York C.P.L.R. § 5222.  See Tiffany (NJ) LLC v. QI Andrew, No. 10 Civ. 9471(KPF)(HBP), 2015 WL 3701602, at *12 (S.D.N.Y. June 15, 2015) ("A plaintiff's ordinary recourse upon securing a money judgment is to look to post[-]judgment remedies provided by [Rule] 69 and state law.").  Citing Rule 62(a) of the FRCP, which provides a brief stay of execution on a judgment and proceedings to enforce it, plaintiff complains that defendant may "conceal and transfer [his] assets" during the "fourteen-day window" before plaintiff is able to serve a restraining notice.  Pl. Mem. ¶ 60; see Fed. R. Civ. P. 62(a).  As an initial matter, the Rule 62(a) "window" is now 30 days.  See Fed. R. Civ. P. 62(a).  In any event, plaintiff has not made a sufficient showing to warrant lifting Rule 62's 30-day stay. See, e.g., Partner Reinsurance Co. v. RPM Mortg., Inc., 18 Civ. 5831 (PAE), 2022 U.S. Dist. LEXIS 116247, at *3 (S.D.N.Y. June 30, 2022) (denying request to lift Rule 62's 30-day stay where plaintiff failed to provide "more than a speculative basis to believe that waiting for the statutory period to pass w[ould] inhibit [plaintiff's] practical ability to collect on its judgment").  Plaintiff's unsubstantiated request for post-judgment asset restraint should be denied.

ii.    *Asset Transfer Order*

Plaintiff further requests that the Court transfer defendant's (unspecified) "frozen assets" in order to satisfy any court-awarded damages in this matter, pursuant to Rule 64 of the FRCP.  See Pl. Mem. ¶ 63.[10]  "However, [plaintiff] does not provide any authority for such relief beyond citing cases that granted similar transfer orders without providing any legal reasoning."  123 Beads Store, 2020 WL 5836423, at *7; accord Mattel, Inc. v. Arming, 18 Civ. 8824 (LAP), 2021 WL 3683871, at *9 (S.D.N.Y. Aug. 18, 2021); see Pl. Mem. ¶ 63 (citing irrelevant cases and/or cases that order asset transfer without any accompanying analysis or reasoning).  "Because the Court is not aware of any reasoned authority providing for such relief, it adheres to [the] conclusion, as articulated in *WowWee Grp. Ltd. v. Meirly* . . . , that the only post-judgment remedies available to [p]laintiff are those under Rule 69 and state law."  123 Beads Store, 2020 WL 5836423, at *7.

Alternatively, plaintiff requests an asset transfer order pursuant to Rule 69 of the FRCP and New York C.P.L.R. § 5225.  See Pl. Mem. ¶ 64.  Section 5225 provides that:

> [u]pon motion of the judgment creditor, *upon notice to the judgment debtor*, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(a) (emphasis added).  Orders issued under section 5225 "are not directed at a defendant's frozen assets generally, but to specific pieces of property."  Mattel, Inc., 2021 WL 3683871, at *9.  Where, as here, plaintiff has failed to identify the particular

---

[10] Plaintiff fails to identify any assets that have been frozen and the Court is unaware of any such assets.

property in which defendant has an interest, plaintiff is not entitled to an order under section 5225. See id.; 123 Beads Store, 2020 WL 5836423, at *8. Moreover, inasmuch as defendant has not been provided with the statutorily required notice of plaintiff's section 5225 motion, see N.Y. C.P.L.R. § 5225(a),[11] the Court recommends that plaintiff's request for this relief be denied, see, e.g., Mattel, Inc., 2021 WL 3683871, at *9.

###    D.    Post-Judgment Interest

As to plaintiff's request for post-judgment interest, which is governed by federal statute, 28 U.S.C. § 1961(a), see Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008), "an award of post-judgment interest is mandatory," and is calculated at the statutory rate set forth in 28 U.S.C. § 1961(a), MRC Indus., Inc. v. Glob. Therapy Sys., LLC, No. 06–CV–3633 (JS)(WDW), 2009 WL 2461106, at *4 (E.D.N.Y. Aug. 7, 2009) (citing Schipani, 541 F.3d at 165). Accordingly, plaintiff should be awarded post-judgment interest on his damages award, to be calculated using the federal rate set forth in 28 U.S.C. § 1961(a), from the date the Clerk of the Court enters judgment in this action until the date of payment.

###    E.    Attorneys' Fees and Costs

Finally, plaintiff requests that the Court award $5,936.00 in attorneys' fees and $576.66 in litigation-related costs, pursuant specifically to section 512(f) of the DMCA. See Proposed Order at 2 (proposing that defendant be ordered to pay plaintiff "$5,936.00 for attorney's fees, as authorized under 17 U.S.C. §512(f), and $576.66 for costs, as authorized under 17 U.S.C. [§] 512(f)"); Supp. Decl. ¶ 5 ("Plaintiff respectfully asserts that the Court need not determine the reasonableness of the requested attorney's fees given that [p]laintiff is

---

[11] Section 5225 expressly provides that "[n]otice of the motion shall be served on the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested." N.Y. C.P.L.R. § 5225(a).

seeking those fees under 17 U.S.C. §512(f), and *not* 17 U.S.C. §505." (emphasis added)); <u>see also</u> Pl. Mem. ¶ 57 ("Plaintiff asserts that the Court need not determine the reasonableness of the requested attorney's fees given that [p]laintiff is seeking attorney's fees under 17 U.S.C. [§] 512(f)."). Because the Complaint fails to adequately state a claim for misrepresentation in connection with the takedown Notice, defendant is not liable for damages, including attorneys' fees and costs, under the DMCA. In addition, while attorneys' fees and costs are available at the discretion of the Court under 17 U.S.C. § 505, plaintiff sets forth no alternative request for attorneys' fees or costs under the Copyright Act. <u>See</u> <u>generally</u> Pl. Motion; Pl. Mem.; Supp. Decl. Thus, the Court declines to recommend that plaintiff be awarded attorneys' fees or costs in this action.

## CONCLUSION

For the foregoing reasons, the undersigned magistrate judge respectfully recommends that the District Court grant in part and deny in part plaintiff's motion for default judgment, as follows: Default judgment should be entered against defendant only as to plaintiff's claim for copyright infringement under the Copyright Act, and plaintiff should be awarded statutory damages in the amount of $15,000.00 in connection with this claim, with post-judgment interest at the statutory rate following entry of judgment. This Court further recommends that plaintiff's requests for injunctive relief, asset restraint, and an asset transfer order be denied. Finally, this Court recommends that plaintiff's claim under the DMCA be dismissed for failure to state a claim, and that his request for attorneys' fees and costs pursuant to 17 U.S.C. § 512 also be denied.

31

Any objections to the rulings contained in this Report and Recommendation must be filed with the Honorable Pamela K. Chen on or before August 4, 2022. Failure to file objections in a timely manner may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008). The Clerk of the Court is respectfully requested to email and mail copies of this Report and Recommendation to defendant at the following address:

Jovi Edwards
6 The Hilders
Ashtead, United Kingdom
KT21 1LS

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**July 18, 2022**

/s/ **Roanne L. Mann**
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**